IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK C. MOORE JR. | INDICTMENT NO. 1:22-cr-00014 |

## PLEA AGREEMENT

Defendant **PATRICK C. MOORE JR.**, represented by Defendant's counsel Carl Lietz and David Bouchard, and the United States of America, represented by Assistant United States Attorney Jennifer Thompson and Trial Attorneys Ethan Womble and Benjamin Smith, have reached a plea agreement in this case. The terms and conditions of that agreement are as follows.

1. Guilty Plea

Defendant agrees to enter a plea of guilty to Count One of the Indictment, which charges a violation of 18 U.S.C. § 371 (42 U.S.C. §§ 1320a-7b(b)(1)(A) and (b)(2)(A)), that is, Conspiracy to Defraud the United States and to Solicit and Receive Illegal Remuneration.

2. Elements and Factual Basis

The elements necessary to prove the offense charged in Count One are (1) that two or more persons in some way agreed to try to defraud the government or one of its agencies, or to commit the crime of paying or receiving health care kickbacks in violation of 42 U.S.C. §§ 1320a-7b(b)(1)(A) and (b)(2)(A), as charged in the Indictment; (2) the Defendant knew the unlawful purpose of the plan and willfully joined in it; (3)

during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Indictment; and (4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

Defendant agrees that the Defendant is, in fact, guilty of this offense. The Defendant agrees to the accuracy of the following facts, which satisfy each of the offense's required elements:

a. Medicare was a federal health care program providing benefits to individuals who were the age of 65 or older, or disabled. **MOORE** admits and agrees that Medicare was a "health care benefit program," as defined by Title 18, United States Code Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

b. **MOORE** admits and agrees that from on or about April 11, 2019, through in or around September 2019, in the Southern District of Georgia, and elsewhere, he knowingly and willfully combined, conspired, confederated, and agreed with Michael Speer, Clifford Powell, Christian Arendt, and others, to knowingly and willfully:

(1) defraud the United States by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of Medicare;

(2) violate Title 42, United States Code, section 1320a-7b(b)(1), by soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

(3) violate Title 42, United States Code, section 1320a-7b(b)(2), by offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare; and for the purchasing, leasing, ordering, and arranging for and recommending the purchasing, leasing, and ordering of any good, item, and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

c. The manner and means by which **MOORE** and his co-conspirators sought to accomplish the object and purpose of the conspiracy, included, among other things, the following:

(1) Through their companies, Semiotic Concepts Ltd. Co. and Center Street Marketing, LLC (collectively referred to as "Center Street"), **MOORE** and Michael Speer oversaw a network of recruiters and marketers, who they instructed to target Medicare beneficiaries in the Southern District of Georgia and elsewhere, and to induce those beneficiaries to accept genetic tests that were not provided as represented, were provided without regard to medical necessity, or were not eligible for reimbursement by Medicare.

(2) **MOORE** and his co-conspirators gained access to Medicare beneficiaries' insurance information and DNA samples ("specimens") through various means of solicitation, including approaching beneficiaries at storefronts, senior centers, and health fairs.

(3) At the direction of **MOORE** and Michael Speer, Center Street recruiters and marketers collected specimens and personal identifying information from Medicare beneficiaries, in the Southern District of Georgia and elsewhere, which were used to generate completed orders or requisitions for genetic tests and other Medicare-required documents (collectively referred to as "doctors' orders") that were, in turn, used to submit claims to Medicare for those tests that were not

4

provided as represented, were provided without regard to medical necessity, or were not eligible for reimbursement by Medicare.

(4) Many of the doctors' orders for genetic tests were signed by physicians and other licensed medical professionals who had not seen, spoken to, or otherwise treated the Medicare beneficiaries, and in the absence of any physician-patient relationship. The physicians and other licensed medical professionals were not treating the beneficiaries for whom they signed orders for genetic tests for cancer or symptoms of cancer, and they did not use the test results in the treatment of those beneficiaries.

(5) **MOORE** and Michael Speer paid Company-1 a "telemedicine" or "teledoc" fee—approximately $100—to cover the cost of physicians or other medical professionals reviewing the orders and to obtain a physician's signature on the doctors' orders for genetic tests.

(6) At the direction of **MOORE** and Michael Speer, the specimens and requisition forms collected by Center Street recruiters and marketers were provided to Company-1, which, in turn, provided the specimens and doctors' orders to laboratories that billed Medicare for genetic tests that were not provided as represented, were provided without regard to medical necessity, or were not eligible for reimbursement by Medicare.

(7) **MOORE**, Michael Speer, Clifford Powell, Christian Arendt, and their co-conspirators received kickbacks and bribes in exchange for the referral of beneficiary insurance information, specimens, and the accompanying doctors' orders for the genetic testing.

(8) In exchange for providing laboratories with the specimens and doctors' orders for each beneficiary, Clifford Powell and Christian Arendt received kickbacks and bribes from those laboratories and associated entities through electronic deposits into Company-1's bank accounts. Clifford Powell and Christian Arendt then, in turn, paid kickbacks and bribes to Company-1's marketers and recruiters out of those bank accounts, including into the Semiotic Concepts Wells Fargo Bank Account Ending x5046 ("Semiotic Account"), for the benefit of **MOORE**, Michael Speer, and others. **MOORE** and Michael Speer then, in turn, paid kickbacks and bribes to Center Street's marketers and recruiters out of Center Street's bank accounts, including the Semiotic Account.

(9) To conceal the kickbacks and bribes, **MOORE**, Michael Speer, and their co-conspirators created, and forwarded to Company-1, sham invoices documenting a fabricated number of hours worked instead of what payment was actually for: beneficiary insurance information and genetic specimens that laboratories used to submit false and fraudulent claims to Medicare.

(10) From on or about April 11, 2019, and continuing through in or around September 2019, **MOORE** and Michael Speer, through the Semiotic Account and other accounts, received kickbacks and bribes in the amount of approximately $4.3 million from Company-1 in exchange for beneficiary information, specimens, and doctors' orders that laboratories used to submit false and fraudulent claims to Medicare.

(11) From on or about April 11, 2019, and continuing through in or around September 2019, laboratories associated with Company-1 and Center Street submitted and caused the submission of claims to Medicare and were paid approximately $7.2 million for genetic tests, which were the product of kickbacks and bribes paid to **MOORE** and others.

d. In furtherance of the conspiracy, and to accomplish its object and purpose, the conspirators committed and caused to be committed, in the Augusta Division of the Southern District of Georgia, and elsewhere, the following overt acts:

(1) On or about April 11, 2019, at the direction of his co-conspirators, **MOORE** sent an email to Clifford Powell and Christian Arendt, with Michael Speer copied, subject "CSM Invoice 3/16-3/31/2019," and stated, "Christian, Please find the attached invoice as discussed. If possible, could we submit a secondary invoice? Thank you, Patrick." Attached to the email was an invoice from **MOORE** at Semiotic

Concepts to Christian Arendt at Company-1, requesting $206,650.00 for a list of items described as, for example, "CGX COMP," and "PGX."

(2) Later that same day, on or about April 11, 2019, **MOORE** sent another email to Clifford Powell and Christian Arendt, with Michael Speer copied, subject "CSM Adjusted Invoice (3/16-3/31/2019)," and stated, "Christian, Per our discussion, please find the adjusted invoice attached. Thank you, Patrick." Attached to the email was an invoice from **MOORE** at Semiotic Concepts to Christian Arendt at Company-1, requesting $206,650.00 for a revised list of items all described as "REFERRAL SERVICES."

(3) On or about May 10, 2019, **MOORE** and Michael Speer referred a specimen collected from Medicare beneficiary J.L. and attendant doctors' orders to Company-1. On or about the same day, **MOORE** sent Christian Arendt a sham invoice for "referral services" to conceal the nature of the payment.

(4) For J.L.'s referral, on or about May 10, 2019, Clifford Powell and Christian Arendt, through Company-1, paid a kickback from the Company-1 Account to **MOORE** and Michael Speer at the Semiotic Account, in the approximate amount of $1,400.

(5) On or about June 10, 2019, **MOORE** and Michael Speer referred a specimen collected from Medicare beneficiary W.D.F. and attendant doctors' orders to Company-1. On or about the same day, **MOORE** sent

Christian Arendt a sham invoice for "referral services" to conceal the nature of the payment.

(6) For W.D.F.'s referral, on or about June 10, 2019, Clifford Powell and Christian Arendt, through Company-1, paid a kickback from the Company-1 Account to **MOORE** and Michael Speer at the Semiotic Account, in the approximate amount of $300.

(7) On or about June 24, 2019, **MOORE** and Michael Speer referred a specimen collected from Medicare beneficiary A.D. and attendant doctors' orders to Company-1. On or about the same day, **MOORE** sent Christian Arendt a sham invoice for "referral services" to conceal the nature of the payment.

(8) For A.D.'s referral, on or about June 25, 2019, Clifford Powell and Christian Arendt, through Company-1, paid a kickback from the Company-1 Account to **MOORE** and Michael Speer at the Semiotic Account, in the approximate amount of $850.

All done in violation of Title 18, United States Code, Section 371.

3. Possible Sentence

Defendant's guilty plea will subject the Defendant to the following maximum possible sentence: 5 years' imprisonment; 3 years' supervised release; a $250,000 fine, or twice any pecuniary gain to the defendant or loss to the victim(s); such restitution as may be ordered by the Court; costs of incarceration and supervision;

and forfeiture of all forfeitable assets. The Court additionally must impose a $100 special assessment per count of conviction.

4. No Promised Sentence

No one has promised Defendant that the Court will impose any particular sentence or a sentence within any particular range. The Court is not bound by any estimate of sentence given or recommendations made by Defendant's counsel, the government, the U.S. Probation Office, or anyone else. The Court may impose a sentence up to the statutory maximum. Defendant will not be allowed to withdraw Defendant's plea of guilty if the Defendant receives a more severe sentence than the Defendant expects.

5. Court's Use of Sentencing Guidelines

The Court is obligated to use the United States Sentencing Guidelines to calculate the applicable guideline range for Defendant's offense. The Sentencing Guidelines are advisory; the Court is not required to impose a sentence within the range those Guidelines suggest. The Court will consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), in determining the Defendant's sentence. The Sentencing Guidelines are based on all of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the conduct underlying the particular Count or Counts to which Defendant is pleading guilty.

6. Agreements Regarding Sentencing Guidelines

   a. Use of Information

   Nothing in this agreement precludes the government from providing full and accurate information to the Court and U.S. Probation Office for use in calculating the applicable Sentencing Guidelines range.

   b. Acceptance of Responsibility

   If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the government will move for an additional one-level reduction in offense level pursuant to section 3E1.1(b) based on Defendant's timely notification of the Defendant's intention to enter a guilty plea.

   c. Amount of the "Benefit Conferred"

   The government and Defendant agree to recommend to the U.S. Probation Office and the Court at sentencing that the amount of the "benefit conferred," for purposes of section 2B4.1 of the Sentencing Guidelines, is approximately $7,231,013.24.

7. Dismissal of Other Counts

   At sentencing, the government will move to dismiss any other Counts of the Indictment that remain pending against Defendant.

8. Cooperation

   a. Complete and Truthful Cooperation Required

   Defendant must provide full, complete, candid, and truthful cooperation in the investigation and prosecution of the offenses charged in Defendant's Indictment and any related offenses. Defendant shall fully and truthfully disclose Defendant's knowledge of those offenses and shall fully and truthfully answer any question put to him by law enforcement officers about those offenses.

   This agreement does not require Defendant to "make a case" against any particular person. Defendant's benefits under this agreement are conditioned only on Defendant's cooperation and truthfulness, not on the outcome of any trial, grand jury, or other proceeding.

   b. Motion for Reduction in Sentence Based on Cooperation

   The government, in its **sole discretion**, will decide whether Defendant's cooperation qualifies as "substantial assistance" pursuant to U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35 and thereby warrants the filing of a motion for downward departure or reduction in Defendant's sentence. If such a motion is filed, the Court, in its sole discretion, will decide whether, and to what extent, Defendant's sentence should be reduced. The Court is not required to accept any recommendation by the government that the Defendant's sentence be reduced.

9. Financial Obligations and Agreements

   a. Restitution

   The amount of restitution ordered by the Court shall include restitution for the full loss caused by Defendant's total criminal conduct. Restitution is not limited to the specific counts to which Defendant is pleading guilty. Any restitution judgment is intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction.

   b. Special Assessment

   Defendant agrees to pay a special assessment in the amount of $100, payable to the Clerk of the United States District Court, which shall be due immediately at the time of sentencing.

   c. Release of Appearance Bond

   Defendant authorizes the Clerk of the United States District Court to release the funds posted as security for an appearance bond in this case, in the amount of $5,000.00, to be applied to satisfy any of the financial obligations imposed by judgment of the Court in this case.

   d. Required Financial Disclosures

   By the date that Defendant enters a guilty plea, Defendant shall complete a financial disclosure form listing all Defendant's assets and financial interests, whether held directly or indirectly, solely or jointly, in Defendant's name or in the name of another. Defendant shall sign the financial disclosure form under penalty of perjury and provide that form to the Financial Litigation Unit of the United States

Attorney's Office and to the United States Probation Office. Defendant authorizes the United States to obtain credit reports on Defendant and to share the contents of those reports with the Court and the United States Probation Office. Defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

e. Financial Examination

Defendant will submit to an examination under oath on the issue of Defendant's financial disclosures and assets if deemed necessary by the United States. Such examination will occur not later than 30 days after the entry of Defendant's guilty plea.

f. No Transfer of Assets

Defendant certifies that Defendant has made no transfer of assets in contemplations of this prosecution for the purpose of evading or defeating financial obligations created by this Agreement or that may be imposed upon Defendant by the Court at sentencing. Defendant promises that Defendant will make no such transfers in the future.

g. Material Change in Circumstances

Defendant agrees to notify the United States of any material change in circumstances, as described in 18 U.S.C. § 3664(k), that occurs prior to sentencing in this case. Such notification will be made within seven days of the event giving rise to the changed circumstances, and in no event later than the date of sentencing.

h. Enforcement

Any payment schedule imposed by the Court is without prejudice to the United States to take all actions and remedies available to it to collect the full amount of the financial obligations imposed by the judgment of the Court in this case. Defendant understands and agrees that the financial obligations imposed by the judgment of the Court in this case will be placed on the Treasury Offset Program so that any federal payment that Defendant receives may be offset and applied to the judgment debt without regard to or affecting any payment schedule imposed by the Court.

10. Waivers

a. Waiver of Appeal

Defendant entirely waives Defendant's right to a direct appeal of Defendant's conviction and sentence on any ground (including any argument that the statute to which the Defendant is pleading guilty is unconstitutional or that the admitted conduct does not fall within the scope of the statute). The only exceptions are that the Defendant may file a direct appeal of Defendant's sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the government appeals the sentence. Absent those exceptions, Defendant explicitly and irrevocably instructs Defendant's attorney not to file an appeal.

b. Waiver of Collateral Attack

Defendant entirely waives Defendant's right to collaterally attack Defendant's conviction and sentence on any ground and by any method, including but not limited

to a 28 U.S.C. § 2255 motion. The only exception is that Defendant may collaterally attack Defendant's conviction and sentence based on a claim of ineffective assistance of counsel.

    c. FOIA and Privacy Act Waiver

Defendant waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any record pertaining to the investigation or prosecution of this case under the authority of the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, and all subsequent amendments thereto.

    d. Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 Waiver

Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence ordinarily limit the admissibility of statements made by a Defendant during the course of plea discussions or plea proceedings. Defendant knowingly and voluntarily waives the protections of these rules. If Defendant fails to plead guilty, or Defendant's plea of guilty is later withdrawn, all of Defendant's statements in connection with this plea, and any leads derived therefrom, shall be admissible for any and all purposes.

11. Defendant's Rights

Defendant has the right to be represented by counsel, and if necessary have the court appoint counsel, at trial and at every other critical stage of the proceeding. Defendant possesses a number of rights which Defendant will waive by pleading guilty, including the right to plead not guilty, or having already so pleaded, to persist

in that plea; the right to a jury trial; and the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

12. <u>Satisfaction with Counsel</u>

Defendant has had the benefit of legal counsel in negotiating this agreement. Defendant believes that Defendant's attorneys has represented Defendant faithfully, skillfully, and diligently, and Defendant is completely satisfied with the legal advice given and the work performed by Defendant's attorneys.

13. <u>Breach of Plea Agreement</u>

If Defendant fails to plead guilty, withdraws or attempts to withdraw Defendant's guilty plea, commits any new criminal conduct following the execution of this agreement, or otherwise breaches this agreement, the government is released from all of its agreements regarding Defendant's sentence, including any agreements regarding the calculation of Defendant's advisory Sentencing Guidelines. In addition, the government may declare the plea agreement null and void, reinstate any counts that may have been dismissed pursuant to the plea agreement, and/or file new charges against Defendant that might otherwise be barred by this plea agreement. Defendant waives any statute-of-limitations or speedy trial defense to prosecutions reinstated or commenced under this paragraph.

14. <u>Entire Agreement</u>

This agreement contains the entire agreement between the government and Defendant.

TARA M. LYONS
ACTING UNITED STATES ATTORNEY

LORINDA LARYEA
ACTING CHIEF, FRAUD SECTION

May 1, 2025
Date

Tania D. Groover
Chief, Criminal Division

May 1, 2025
Date

Jennifer S. Thompson
Alabama Bar No. 8400E77T
Assistant United States Attorney

May 1, 2025
Date

Ethan Womble
Texas Bar No. 24102757
Trial Attorney, Fraud Section

May 1, 2025
Date

Benjamin J. Smith
New York Bar No. 5220637
Trial Attorney, Fraud Section

I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect.

5/2/2025
Date

*Patrick Moore*
Patrick C. Moore Jr.
Defendant

I have fully explained to Defendant all of Defendant's rights, and I have carefully reviewed each and every part of this agreement with Defendant. I believe that Defendant fully and completely understands it, and that Defendant's decision to enter into this agreement is an informed, intelligent, and voluntary one.

5/2/2025
Date

W. Carl Lietz III
David H. Bouchard
Counsel for Patrick C. Moore Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA

v.

INDICTMENT NO. 1:22-cr-00014

PATRICK C. MOORE JR.

ORDER

The Court has considered the Plea Agreement filed in this case in conjunction with the interrogation by the Court of the Defendant and the Defendant's attorney at a hearing on Defendant's motion to change Defendant's plea. The Court finds that Defendant's plea of guilty is made freely, voluntarily and knowingly.

Therefore, **IT IS HEREBY ORDERED** that the plea of guilty by Defendant be and is hereby accepted, and the Plea Agreement be and is hereby ratified and confirmed.

**ORDER ENTERED** at Augusta, Georgia, this 5th day of May 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA